PEOPLE v KRIM

Docket No. 169682. Submitted October 9, 1996, at Detroit. Decided November 26, 1996, at 9:45 A.M.

Daniel J. Krim pleaded guilty in the Oakland Circuit Court, Rudy J. Nichols, J., of unarmed robbery and assault with intent to commit great bodily harm less than murder. In sentencing the defendant to imprisonment of three to fifteen years for the unarmed robbery conviction and two to ten years for the assault conviction, the court stated at the sentencing hearing and indicated in the judgment of sentence its permission for the defendant's placement in a special alternative incarceration unit or "boot camp" pursuant to MCL 798.11 *et seq.*; MSA 28.2356(1) *et seq.* The prosecution filed a postjudgment motion seeking a revocation of the court's permission for the defendant's placement in boot camp. The court denied the motion. The prosecution appealed by leave granted.

The Court of Appeals *held*:

The prosecution waived the issue of the defendant's placement in boot camp by failing to raise an objection to such placement at the time of sentencing.

Affirmed.

SENTENCES — SPECIAL ALTERNATIVE INCARCERATION UNITS — PROSECUTION'S OBJECTIONS.

The prosecution may be deemed to have waived a postsentencing challenge to a sentencing court's grant of permission for a defendant's placement in a special alternative incarceration unit or "boot camp" where the prosecution did not object to the court's grant of permission at the sentencing hearing (MCL 798.11 *et seq.*; MSA 28.2356[1] *et seq.*).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the people.

*Neumark & Simmons* (by *Frederick A. Neumark*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and HOOD and H. D. SOET,* JJ.

PER CURIAM. Defendant pleaded guilty of unarmed robbery, MCL 750.530; MSA 28.798, and assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279. He was sentenced to the respective terms of three to fifteen years' and two to ten years' imprisonment. Defendant originally filed a claim of appeal as of right while the prosecution filed an application for a delayed cross appeal. This Court granted the prosecution's application for leave to appeal. Defendant's claim of appeal was eventually dismissed by stipulation of the parties. Therefore, the only issue to resolve involves the prosecution's challenge to defendant's sentences. We affirm.

Defendant was originally charged with assault with intent to commit murder, MCL 750.83; MSA 28.278, and unarmed robbery. He agreed to plead guilty of assault with intent to do great bodily harm and of unarmed robbery in exchange for dismissal of the charge of assault with intent to commit murder.

At the plea hearing, defendant admitted that on February 7, 1993, he was involved in an assault on the victim in a parking lot in Madison Heights. Defendant admitted slapping the victim around and injuring her when he struck her in the face two or three times. When he left the scene of the crime, he believed that the victim was unable to move. Defendant also admitted that he aided and abetted his codefendant in rob-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bing the victim of her purse. The victim's purse was later found in a garage at the house where defendant was then living.

The victim gave the court her version of the offense. The victim could not recall much of the crime, but remembered that she had been at a bar with a girlfriend and that she thought that she had had five or six drinks. The next thing that she could recall was two white males kicking and hitting her in the head and legs. She could not identify the men. She also recalled someone lying on top of her. She remembered waking up in a dumpster and she did not have any clothing on below her waist. She thought she was in the dumpster for hours. The victim found help at a nearby business.

The victim had bruises on her legs and the entire left side of her face was swollen. One of the bruises resembled a shoe heel. Her left eye was swollen shut. She was hospitalized for three days and, at the time of the plea hearing, she still had some bruising and swelling from the attack. She feared that the men involved in the attack would still come after her because they had taken her purse.

The trial court sentenced defendant to a term of three to fifteen years' imprisonment for the unarmed robbery conviction and two to ten years' imprisonment for the assault conviction. On the record at the time of sentencing, the trial court ruled that "You [defendant] will be scheduled for the prisoner SAI [Special Alternative Incarceration] program" as part of its sentencing decision. The trial court also noted in the judgment that defendant was eligible to participate in the SAI program.

Defendant's codefendant pleaded guilty of the same crimes and he was sentenced at the same hearing as defendant. The codefendant received sentences of six to fifteen years' imprisonment and one to ten years' imprisonment.

The prosecution filed a postjudgment motion asking the court to modify its sentencing decision regarding defendant's eligibility for the SAI program (or boot camp). However, the trial court denied the motion for the following reasons:

> *The Court:* The question here is whether or not the Court may revoke a sentence providing the S.A.I. Alternative Boot Camp if it's otherwise been validly imposed and it was not objected to by the People. Under the circumstances, the Court does believe after reviewing both sentences itself— the Friday morning, I believe it was July 9th that it occurred, that there was more than adequate time on behalf of the People to object to any facet of this sentence that was being recommended by Probation. The Court painstakingly went through the Sentence Guidelines as to both Defendants and asked for each and every objection to accuracy or relevancy both by the People and the Defendant and as it relates to any other things they wish to say on behalf of their respective clients.
>
> At no point did this Court observe, in reviewing the tape, that the S.A.I. Alternative Boot Camp was ever objected to and the Court believes under the circumstances that this Court is without authority to modify the sentence as requested by the People. For those reasons, the Court denies the People's request.

On appeal, the prosecution argues that defendant's sentences violate the principle of proportionality because the trial court's sentencing decision allowed defendant to serve the sentences in boot camp. The prosecution argues that the sentences are disproportionate because defendant actually served only a total

of nine months (approximately five months in the county jail, one month in intake, and three months in boot camp). We need not reach the merits of the prosecution's argument for the reason that the prosecution failed to object below to the SAI placement alternative.

The trial court specifically provided at sentencing that defendant was eligible to serve time in boot camp pursuant to the Special Alternative Incarceration Act, MCL 798.11 *et seq.*; MSA 28.2356(1) *et seq.* This relatively new statute allows for certain offenders sentenced to prison to serve alternative sentences in boot camps if they meet the statutory eligibility requirements. MCL 798.13(2); MSA 28.2356(3)(2). Placement in a boot camp was formerly limited to defendants sentenced to probation, MCL 798.13(1); MSA 28.2356(3)(1).

An offender may be placed in an SAI unit for not less than 90 days or more than 120 days, MCL 791.234a(6); MSA 28.2304(1)(6). Upon completion of the SAI program, the prisoner is placed on parole for not less than eighteen months or the balance of the minimum sentence, whichever is greater. MCL 791.234a(7); MSA 28.2304(1)(7).

The SAI Act includes certain procedures and eligibility requirements. MCL 791.234a; MSA 28.2304(1) provides in relevant part as follows:[1]

> (1) A prisoner sentenced either before, on, or after the effective date of the amendatory act that added this section to an indeterminate term of imprisonment under the juris-

---

[1] MCL 791.234a; MSA 28.2304(1) was amended three times in 1994. Those amendments do not apply to this case where sentencing occurred in 1993. The version of the statute in effect at the time of sentencing was from 1992 PA 22.

diction of the department shall be considered by the department for placement in a special alternative incarceration unit established under section 3 of the special alternative incarceration act, Act No. 287 of the Public Acts of 1988, being section 798.13 of the Michigan Compiled Laws, if the prisoner meets the eligibility requirements of subsections (2) and (3). For a prisoner committed to the jurisdiction of the department on or after March 19, 1992, the department shall determine before the prisoner leaves the reception center whether the prisoner is eligible for placement in a special alternative incarceration unit, although actual placement may take place at a later date. A determination of eligibility does not guarantee placement in a unit.

One of the eligibility requirements is that, at the time of sentencing, the trial court must not have prohibited the defendant's participation in the SAI program, MCL 791.234a(2)(f); MSA 28.2304(1)(2)(f). MCL 791.234a(4); MSA 28.2304(1)(4) also addresses the procedures involved:

If the sentencing judge prohibited a prisoner's participation in the special alternative incarceration program in the judgment of sentence, that prisoner shall not be placed in a special alternative incarceration unit. *If the sentencing judge permitted the prisoner's participation in the special alternative incarceration program in the judgment of sentence, that prisoner may be placed in a special alternative incarceration unit if the department determines that the prisoner also meets the requirements of subsections (2) and (3).* If the sentencing judge neither prohibited nor permitted a prisoner's participation in the special alternative incarceration program in the judgment of sentence, and the department determines that the prisoner meets the eligibility requirements of subsections (2) and (3), the department shall notify the judge or the judge's successor, the prosecuting attorney for the county in which the prisoner was sentenced, and any victim of the crime for which the prisoner was committed if the victim has submitted to the department a written request for any notification pursuant to sec-

tion 19(1) of the crime victim's rights act, Act No. 87 of the Public Acts of 1985, being section 780.769 of the Michigan Compiled Laws, of the proposed placement of the prisoner in the special alternative incarceration unit not later than 30 days before placement is intended to occur. The department shall not place the prisoner in a special alternative incarceration unit unless the sentencing judge, or the judge's successor, notifies the department, in writing, that he or she does not object to the proposed placement. [Emphasis added.]

In the case at bar, the prosecution did not object at the time of sentencing to the trial court allowing defendant to participate in the SAI program. The statute specifically provides that the trial court should make this decision at the time of sentencing and include it in the judgment of sentence. MCL 791.234a(2)(f); MSA 28.2304(1)(2)(f). We believe that the burden is on the prosecution to voice its objection to a defendant's placement in the SAI program at the time of sentencing, or the issue may be waived. See, e.g., *People v Sharp*, 192 Mich App 501, 504; 481 NW2d 773 (1992). As a matter of policy, the prosecution cannot raise postsentencing objections to matters that could have been raised at the time of sentencing. See, e.g., *People v Pfeiffer*, 207 Mich App 151, 159-160; 523 NW2d 640 (1994).

MCL 791.234a(4); MSA 28.2304(1)(4) provides certain postsentencing procedures for the resolution of this issue if the trial court did not decide eligibility at the time of sentencing. However, the prosecution risks waiving this issue if it does not preserve its objections at the time of sentencing where the trial court decides that a defendant is eligible for SAI placement, as occurred in the case at bar. This issue should be resolved at the time of sentencing when all

the parties are present and the court is in the best position to make its decision regarding the defendant's placement. *In re Dana Jenkins*, 438 Mich 364, 370; 475 NW2d 279 (1991).

In this case, as the trial court noted, the prosecution was aware from the contents of the presentence investigation report that the probation department had recommended that defendant be placed in the SAI program. The prosecution did not raise its objection to defendant's placement in the SAI program until after sentencing. This was too late to raise the issue when the trial court had made its decision at the time of sentencing. The trial court was also well aware of the victim's version of this offense and the codefendant's role when it decided that defendant was eligible for SAI placement at the time of sentencing. The trial court procedurally made a valid decision at the time of sentencing regarding defendant's eligibility for SAI placement as addressed in MCL 791.234a; MSA 28.2304(1), and the trial court lacked jurisdiction to grant a resentencing for this reason. *In re Dana Jenkins, supra* at 370.

We find that the prosecution waived objection to defendant's placement in the SAI program by failing to object at sentencing. We need not reach the issue whether the trial court's sentencing decision that defendant was eligible for placement in the SAI program is reviewable under the principle of proportionality or whether the sentences are disproportionate when the prosecution did not object at sentencing to defendant being placed in the SAI program.

Affirmed.