*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 22, 2023

Plaintiff-Appellee,

v

No. 361999
Washtenaw Circuit Court
LC No. 21-000034-FC

LAURA MAE HART,

Defendant-Appellant.

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of carjacking, MCL 750.529a, and unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant to concurrent sentences of 135 months to 30 years' imprisonment for carjacking and 135 months to 15 years' imprisonment for unlawful imprisonment. Defendant now appeals as of right. For the reasons set forth in this opinion, we remand for entry of an amended judgment of sentence reducing defendant's minimum sentence for unlawful imprisonment to 120 months and we affirm in all other respects.

## I. BACKGROUND

On the night of March 15, 2020, Deborah Ritz was driving a truck that her father had given to her about a year earlier. Ritz, who was homeless, was living out of the vehicle. That night, she parked in the parking lot of a homeless shelter where she planned to sleep in her truck for the night. Defendant and several other people approached Ritz's truck. Ritz did not know defendant or any of the other people. At some point, defendant asked Ritz to give her a ride somewhere and Ritz refused. Ritz offered to give her a ride the next day.

Ritz, defendant and the other people with defendant continued talking when they were joined by Kevin Schoenmetz. Defendant and Schoenmetz began arguing, went back into the shelter, and then returned to Ritz's vehicle. During these interactions, defendant and Schoenmetz were taking turns sitting inside Ritz's vehicle to keep warm.

Ritz testified during trial that at some point during the evening, defendant approached the vehicle and was upset that Schoenmetz was sitting inside the vehicle. Defendant then insisted on

a ride, but Ritz explained she had been drinking and was not comfortable driving. Ritz testified that defendant then punched her through the open window of the truck. At the same time, Schoenmetz pulled Ritz's hair and began punching her. Defendant continued to punch Ritz as she attempted to pull Ritz out of the vehicle. Ritz testified, "she kept saying, 'Bitch, get out of the car, bitch, get out of the car.'" Schoenmetz was still holding Ritz by her hair. Defendant opened the door and threw Ritz's legs toward the middle of the vehicle while Ritz attempted to kick her. Eventually, defendant pushed Ritz into the middle of the vehicle and made her way into the driver's seat. Ritz attempted to yell and scream for help, but defendant drove the truck away from the parking lot.

While defendant was driving, Ritz grabbed the wheel and attempted to crash the vehicle to stop defendant. Meanwhile, Schoenmetz continued punching Ritz and pulling her hair, and defendant began biting her. Defendant bit Ritz four times. Defendant told Ritz that she was going to kill her when they arrived at the intended destination. Ritz testified:

> She just kept telling me she was going to kill me when she got me where she was taking me. "I can't wait to get you there. You're going to die today, bitch. I'm going to fucking kill you." Those are the things that she kept saying.

After about 15 minutes of driving, during which Ritz continued to struggle with defendant and Schoenmetz, they arrived at a house. Defendant got out of the truck, turned it off, and took the keys to the vehicle. Ritz got out of the truck to follow defendant, but defendant turned around and told Ritz to get back in the truck. Defendant started fighting with another man at the house, after which Schoenmetz got out of the truck and was attacked by several other people.

Ritz testified that several women were "attacking" defendant and they told Ritz to leave. Ritz responded that defendant had her key. According to Ritz, the women had defendant on the ground and they bent defendant's fingers back, pried the key out of her hand, and threw the key to Ritz. As Ritz drove away, Schoenmetz jumped into the truck and they drove to the hospital.

Defendant was convicted and sentenced as previously stated. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence supporting her carjacking conviction, arguing that the evidence was insufficient to establish beyond a reasonable doubt that she intended to permanently deprive Ritz of her vehicle.

"The test for determining the sufficiency of evidence in a criminal case is whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). An appellate court must determine whether any rational trier of fact could have found from the evidence, viewed in the light most favorable to the prosecution, "that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 399-400. Our Supreme Court has further explained:

> But more importantly, [t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support

of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citations omitted; alteration in original).]

Defendant was convicted of carjacking in violation of MCL 750.529a, which provides in relevant part:

(1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

(2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

Due process requires the prosecution to prove each element of the offense beyond a reasonable doubt. *Oros*, 502 Mich at 239 n 3. However, defendant on appeal only argues that there was insufficient evidence to prove that she had the requisite intent to be guilty of carjacking. Defendant contends that there was no evidence that she intended to treat the truck as her own or otherwise permanently deprive Ritz of the vehicle.

This Court recently held that carjacking, under the current version of MCL 750.529a,[1] is a specific-intent crime that requires the prosecutor to prove beyond a reasonable doubt that the defendant "had the intent to steal or permanently deprive" a person of the motor vehicle. *People v Smith*, 336 Mich App 297, 307; 970 NW2d 450 (2021). In construing this statute, we stated that the statute "include[d] 'in the course of committing a larceny of a motor vehicle' as an element of the offense." *Id*. at 306, quoting MCL 750.529a(1). Noting that there is "no statutory definition of larceny in Michigan and all statutes use the term in its common-law sense," *Smith*, 336 Mich App at 306 (quotation marks and citation omitted), we explained that larceny is a specific-intent crime with the following common-law elements: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property," *id*. (quotation marks and citation omitted). We concluded:

[T]he unambiguous language of MCL 750.529a requires that the prosecution prove that defendant was "in the course of committing a larceny of a motor vehicle," which includes "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of

---

[1] Defendant was convicted under the current version of the statute.

the larceny, or in an attempt to retain possession of the motor vehicle." MCL 750.529a(2). Our Supreme Court has held that "[a]n attempt consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993) (quotation marks and citation omitted). Therefore, to convict a defendant of carjacking, the prosecution must establish that the defendant's acts occurred during an attempt to commit, during the commission of, or after the commission of a larceny of a motor vehicle, requiring the prosecutor to prove that the defendant had the intent to steal or permanently deprive a person of the motor vehicle. [*Smith*, 336 Mich App at 307 (second alteration in original).]

"[T]he intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time or the retention of property with the intent to return the property on the condition that the owner pay some compensation for its return." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent. [Q]uestions of intent and the honesty of belief inherently involve weighing the evidence and assessing the credibility of witnesses, which is a task for the jury." *Smith*, 336 Mich App at 308 (quotation marks and citations omitted; alteration in original).

In this case, after Ritz refused to give defendant a ride for the second time, defendant punched Ritz, attempted to remove Ritz from the truck, and demanded that Ritz get out of the vehicle. Defendant could not remove Ritz because Schoenmetz was holding Ritz's hair from inside the truck. Furthermore, once they arrived at defendant's intended destination, defendant took the key and would not give it back. Ritz only regained possession of her vehicle after defendant was physically and violently forced to surrender possession of the key by various third parties. Viewed in a light most favorable to the prosecution, a reasonable trier of fact could conclude beyond a reasonable doubt from this evidence that defendant intended to retain Ritz's vehicle without the purpose to return it within a reasonable time, satisfying the specific intent required to support a conviction under MCL 750.529a. *Harverson*, 291 Mich App at 178; *Smith*, 336 Mich App at 306-307. We thus affirm defendant's carjacking conviction.

## III. PROPORTIONALITY AND REASONABLENESS

Defendant next argues that her sentence, although within the advisory guidelines range,[2] was nonetheless disproportionate and unreasonable.

As defendant recognizes, MCL 769.34(10) provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." Defendant also recognizes that this Court has held that our Supreme Court's decision in *People v Lockridge*, 498

---

[2] Defendant's minimum sentence guidelines range was 135 to 225 months. As noted previously, her minimum sentence for each conviction was 135 months, to be served concurrently.

-4-

Mich 358; 870 NW2d 502 (2015), "did not alter or diminish MCL 769.34(10)[.]" *People v Posey*, 334 Mich App 338, 356; 964 NW2d 862 (2020) (quotation marks and citation omitted; alteration in original).

Nonetheless, defendant argues on appeal that this Court should "grant her leave to appeal or hold this case in abeyance." As defendant notes, our Supreme Court granted oral argument on the application for leave to appeal in *Posey* to address issues that included "whether the requirement in MCL 769.34(10) that the Court of Appeals affirm any sentence within the guidelines range, absent a scoring error or reliance on inaccurate information, is consistent with the Sixth Amendment, the due-process right to appellate review, and *People v Lockridge*, 498 Mich 358 (2015); and, if not, . . . whether the appellant's sentence is reasonable and proportionate." See *People v Posey*, 508 Mich 940 (2021).

We are bound by our holding in *Posey*. MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."). As of the issuance of the present opinion, our Supreme Court has not issued a decision in *Posey*. Our opinion in *Posey* has not been reversed or modified. MCR 7.215(J)(1). "The filing of an application for leave to appeal in the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2).

Defendant does not argue on appeal that there was an error in scoring the guidelines or that the trial court relied on inaccurate information in determining defendant's sentence. Accordingly, defendant is not entitled to resentencing. MCL 769.34(10); *Posey*, 334 Mich App at 356.

IV. TWO-THIRDS RULE VIOLATION

Finally, defendant argues that her sentence for unlawful imprisonment violates the two-thirds rule under *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972) and MCL 769.34(2)(b).

Defendant concedes that this issue is unpreserved and that our review is for plain error affecting substantial rights. We review unpreserved claims of error for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). The defendant bears the burden to demonstrate that an error occurred, that the error was clear or obvious, and that the plain error affected his or her substantial rights. *Id*. at 763. To establish the last element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. If a defendant satisfies these three requirements, then "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

-5-

In this case, the trial court sentenced defendant to 135 months to 180 months' imprisonment for count two, unlawful imprisonment. "The court shall not impose a minimum sentence, including a departure, that exceeds 2/3 of the statutory maximum sentence." MCL 769.34(2)(b). Here, the trial court imposed the statutory maximum sentence for defendant's unlawful imprisonment conviction. MCL 750.349b(2) ("A person who commits unlawful imprisonment is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $20,000.00, or both."). In *Tanner*, 387 Mich at 690, our Supreme Court held that "that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper" because such a sentence does not constitute an indeterminate sentence. See also MCL 769.8 and MCL 769.9 (discussing the imposition of indeterminate sentences); *People v Feliciano*, 485 Mich 1122 (2010) ("The minimum term for an indeterminate sentence may not exceed two-thirds of the maximum . . . ."). Here, defendant's minimum sentence exceeds two-thirds of her maximum sentence of 15 years.[3] The longest minimum sentence defendant could have received for her unlawful imprisonment conviction was 10 years, or 120 months.

The proper remedy for violation of the two-thirds rule is to remand to the trial court for imposition of a reduced minimum sentence complying with the two-thirds rule and entry of an amended judgment of sentence. *People v Thomas*, 447 Mich 390, 392-394; 523 NW2d 215 (1994); *Feliciano*, 485 Mich at 1122-1123 (remanding for entry of an amended judgment of sentence based on a violation of the two-thirds rule and stating that "[w]hen a court imposes an indeterminate sentence that violates this rule, and the maximum sentence is otherwise valid, it is the minimum sentence that must be adjusted because this is the portion of the sentence that is unlawful"). We therefore remand this matter to the trial court for entry of an amended judgment of sentence reducing defendant's minimum sentence for unlawful imprisonment to 120 months.

Remanded for further proceedings consistent with this opinion. We affirm in all other respects. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[3] We note that the prosecution concurs that this sentence violates the two-thirds rule.